Good morning. My name is Saad Ahmed. I represent the petitioner in this case. Petitioner is a native and citizen of India and she seeks review of the board's final order of removal in which it affirmed the immigration judge's decision to deny her application for asylum on the sole ground that petitioner who suffered prosecution can reasonably relocate to another part of the country to avoid future persecution. Under the regulations, when an asylum applicant establishes false persecution, the burden shifts to the government to demonstrate by a preponderance of evidence that not only is relocation possible, that it would be reasonable under all circumstances. In this case, the regulations basically provide a two-prong analysis. First prong is whether relocation is possible. Second prong is whether it would be reasonable under all circumstances. I think in this case, even if the court were to conclude that it has been, you know, that my client's fear of future persecution can be avoided by her relocating to another part of the country, I think the immigration judge's analysis failed on the second prong of the analysis, the reasonableness of the analysis. And I think it fails because in this case, the immigration judge did not look at all the factors that are provided in the regulations. The immigration judge looked into, I mean, he made assumptions and made his decision on reasonableness on incorrect facts. In this case, for example, the immigration judge said that the petitioner could avoid future harm by reasonably relocating to another part of the country because she was a highly educated woman and that she had a substantial employment history and she was not harmed subsequent to the rape that took place at the police station. That's not true, Your Honor. In fact, subsequent to the rape, the petitioner was targeted extensively. She testified credibly, it's in the record, that the police came to her house several times to look for her. It arrested her brother and tortured him brutally. And that was several years after the rape, was it not? It was several years after the rape. However, that showed that the police was interested in her. The police was looking for her. That's completely incorrect to say that just because she remained unharmed or she had no other contacts with the police subsequent to her rape that somehow she was, you know, she would be okay if she returned. I think in this case, one also has to look that under this Court's case law, when it's the government of the country that persecutes an asylum applicant, there is a presumption that the fear of persecution is all over the country. It's nationwide. The Court is clear on this issue. And secondly, as the prior Court demonstrated, I mean, the prior case demonstrated, the country condition reports in India are mixed at best. They do not establish by preponderance of evidence that the harm, I mean, the future harm is rebutted by a fundamental change in circumstances in India. In this case, Your Honor, the immigration judge also justifies his internal relocation finding on the fact that And he acknowledged that for single women living in India, relocation would be a substantial hardship. But he assumed that because my client is married, that she would not be single and that relocation would be easy. I'd like to point out that her husband ---- You've alleged he's a refugee, correct? He's a refugee, Your Honor. What evidence do you have of that? Excuse me, Your Honor? What evidence do you have that he's a refugee? Your Honor, he was granted refugee status by the government. And I'd like to point out that it was entirely the government's burden. It was entirely the government's burden. In fact, the Court has said that the Petitioner was not required to introduce any evidence as to the reasonableness of relocation when false prosecution is established. If the judge wanted to develop the record more, he should have developed the record more. He should not have assumed simply because she's married that her husband would relocate with her in India. You're saying it was not your burden before the Board of Immigration Appeals to raise the issue of status, correct? That's correct. It was not the client's burden. It was the burden remained with the government to demonstrate that relocation was reasonable under all circumstances. You may not have caught Judge Watson's question. He's referring to the Board of Immigration Appeals. So if the argument, if you objected to the I.J. considering coming up with a statement that her husband, she was married and inferring that her husband would relocate with her. Yes. That was air on the part of the I.J. Shouldn't you have raised that with the Board of Immigration Appeals? Yes, Your Honor. That's what I understood. And Judge Watson's question. And is it waived as a result of not being raised? Right. To answer the first question, yes. If she, if the prior counsel had done that, that could have been a ground to remand the case back to the immigration court. And I think, secondly, this Court has been pretty generous with the exhaustion requirements. The purpose of the administrative exhaustion before the Board is to not interfere with, I mean, it's premature interference with agency action. I think in this case, the record was well developed. I think the prior counsel's BIA brief raised the issues adequately to put the Board on notice as to all these issues. And, again, I would like to point out that because the burden was with the government in this case. Well, you know, so I read the I.J.'s decision carefully. And unlike many of the decisions we see, this one seemed to be pretty thorough. It was thorough in them. And I'm still not yet, I haven't yet heard from you. You said the I.J. didn't consider all the factors that he should have in making his, the reasonableness determination. I'm not sure I'm hearing from you what he didn't consider. Well, what he did not consider was the fact that he was required to consider. He was required to consider the circumstances of response, of my client, the Petitioner. For example, he had to take into account that she has two U.S. citizen children. She's married to a refugee. Well, I understand. She's married to somebody in the United States. Married to somebody in the United States. And the fact that he acknowledged, I think what he did not, I think his reason was wrong was because it was premised on an assumption that was incorrect. He acknowledged that relocation would be very difficult for single women. But then he also said, however, Petitioner was not a single woman. She could relocate because she was married. And that's what it comes down to in this case, is that if evidence had been presented to the immigration judge that she, her husband cannot reasonably, I mean, cannot relocate to India with her, that I think that this assumption would not have withstood. I would like to save some time for rebuttal. That's fine.  Thank you. Good morning. May it please the Court. Good morning. My name is Paul Stone. I represent the Respondent, Attorney General of the United States in this case. Because Soni was persecuted in the past, the government had the burden with the immigration judge to show that it was reasonable for her to relocate within India. But on petition for review, she has the burden to identify evidence that compels the conclusion that the government didn't carry its burden below. In this case, as Judge Paez pointed out, the immigration judge did put out a thorough opinion. And both the immigration judge and the board did the individualized analysis required by the regulation and by this Court's precedence. First, they considered the country condition evidence showing that Sikhs, who are low-profile activists and not known militants, are generally able to relocate without fear. Then they considered the facts particular to Ms. Soni's situation. Excuse me. Is that true when there's been government persecution by the police right there? Well, there's a number of points associated with that. With past persecution by the government, there is presumption of future persecution. The relocation question is slightly different. The question is whether the police will pursue her nationally, the Punjab local police will pursue her nationally. And the evidence that the Board of Immigration relied on is that the police don't tend to pursue people nationally unless they're known militants and high-profile. She was working not in a contiguous state but one state over previously, correct? I'm sorry. You mean she wasn't working in the Punjab? She was working in a different city. Correct, which was not in a contiguous state. It was like one state removed. Right. And they never pursued her at that place of work. They apparently came to her home looking for her. You state that. Is that because there's an absence of evidence that anyone sought her there? Is that the issue? Is that how you come up with that evidence? No, she did testify that they never came to her place of work. What is the significance of the immigration judge's failure to address familial ties in assessing the reasonableness of internal relocation? Well, below, she was actually asked three times why she couldn't live elsewhere in India in an attempt to draw any other reasons that there would be a problem. She didn't cite any reason other than her fear of the Punjab police. And, in fact, in the last time she was asked, she was asked, is there any reason other than that, and she said no. So based on that, the immigration judge wasn't necessarily required to bring to put that into account, take that into account, because apparently it wasn't a real concern to her. Also, as you pointed out to the first prong of the analysis, right? I'm sorry, Your Honor? The question Judge Watson asked you goes to the first prong of the relocation analysis. First step, can you reasonably expect the person to relocate? So the first inquiry, as I understand under the regulation, the first inquiry, would it be safe for her to relocate? Right. That goes to whether she'll be pursued. And the second prong is whether it's reasonable under all the circumstances. Whether it's reasonable under all the circumstances. And I thought Judge Watson's question was that here she is in the United States and she's married. That's correct. So why doesn't that factor into whether it's reasonable? She's got two children here in the United States. Well, that's an issue that hasn't been well discussed. And, you know, there's a question as to whether an after-acquired equity like that should be brought into account. She is present. She came to the United States. She's present illegally. And she acquired these equities after she was here, present illegally. But as you said. Split up the family and send her back. But that's also not clear because as you pointed out, Judge Watson, there's nothing in the evidence establishing that her husband actually is a refugee and wouldn't be able to go back with her. And her children wouldn't be able to go back with her. That's an important factual point. It just is not accurate. But we do know from her testimony that she's married to somebody here in the United States. That's correct, Your Honor. And she claims he's a lawful permanent resident. Do we know anything about her status seeking adjustments based on her marriage? I don't, Your Honor. I think it would be best to ask opposing counsel. I believe he's filed a 9-1-30, but that may not be correct. All right. Am I correct that if there is government persecution, that there's a presumption that she can't relocate that has to be rebutted? That's correct, Your Honor. And that's why the government had the burden below to show that it was reasonable for her to relocate as opposed to her having the burden showing that she couldn't. Yes. So that being the case, that the government's burden, and what they've shown is that she could relocate because she's married? No. No, Your Honor. There's a number of reasons that the immigration judge and the board found that she could relocate. Although she didn't raise the marriage issue with the board, as the panel pointed out earlier, the board nonetheless didn't adopt that portion of the immigration judge's decision when it discussed it. The reason she could relocate, according to the board, was, for example, she hadn't been actively involved in the AISSF from 1999 to her departure in 2003. She left the country to attend a conference in Las Vegas for her job. She didn't actually leave because of her fear of persecution. She's highly educated with a master's degree, and she had a good job when she was a manager, so she should be able to find other employment. The police never actually sought her a place of employment. She speaks Hindu, Punjabi, and a little English, which she stopped studying in the 10th grade. And she also testified that she was a low-level member of the AISSF. And then the issue as to whether the persecution would be countrywide, there's a few reasons why it wouldn't be. First, it's not clear that the national government is unable or unwilling to prosecute the police. That is, the police were acting outside their authority and the scope of their powers. You would agree that if the Punjab police actually engaged in her rape, that that's outside the scope of their authority, correct? Right, but that doesn't end the inquiry. The next question is whether the national government is unable or unwilling to prosecute them. And do you know whether any Punjab police officers have been brought to justice as a result of this sort of activity, or does it still go on? It does happen. Abuses do happen there, as they do everywhere. The record does show that enforcement of human rights against police officers has gone up. In fact, police officers are chafing at it, feeling as though they're being victimized, ironically. So there is indication that they are going after the police officers. In this record, in 2005, it does show that a law was passed requiring in all claimed cases of rape that DNA tests must be made as a way to more effectively prosecute the police officers. Let me ask you a question about this issue of familial ties that Judge Watson referred to in counsel for the petitioner referred to. So if you look at the regulation, the regulation says the purposes of determinations under this paragraph adjudicate or should consider but are not limited to considering whether the applicant would face other serious harm in the place of suggested relocation. Then it goes on and talks about ongoing civil strife and administrative economic and cultural constraints such as age, gender, health, and social and familial ties. So what why would that preclude considering the familial ties that she now has in the United States? I don't think it necessarily does, but the problem here is the record doesn't show that. But the way the I.J. used that was to say that she's married, inferring that the husband would go with her to the, would move with her to, you know, travel with her back to India. That's correct. Why is that a reasonable inference to draw from these facts in light of the context of this regulation? Well, first, there's nothing in the record suggesting that he wouldn't because it doesn't, the record doesn't show that he is, in fact, a refugee. But also, the regulation doesn't require consideration. They don't have to go in seriatim through every single consideration. No, I understand that, but he seemed to have noted that. He did note that. And, frankly, without evidence that he was a refugee, it's a reasonable inference. He is the trier of fact. He's allowed to make inferences based on the information in front of him. Both, you know, both spouses were apparently. She had children who were born here in the United States? Yes. I believe she has two children. Okay. And I also believe my time is up, Your Honor. Yeah, I have one question. Does the new rule about having appeals forfeiting the ability to voluntarily depart, does that apply to her? Your Honor, I don't know, actually. I would need to look into that. Her opposing counsel may know. But I'm sorry, I don't have the information right now. If it does, it seems to me that that's a consideration because she couldn't come back for ten years to see her kids. It could be, and that would be important to raise with the Board, Your Honor. Okay. Thank you for your generous attention. Thank you, Mr. Stern. Your Honor, just to ask, just to answer Judge Hugg's question, yes, if she leaves the country, she would be barred from reentering the country for ten years. That's the law. And secondly, to answer Judge Paez's question, an I-130 has been filed by her husband who is now a U.S. citizen and has been approved, but we are facing the same problem as the previous petitioner was, that a motion to reopen in this case would be untimely. And unless the government joins in, the petitioner would not be able to reopen the case based on her marriage to the U.S. citizen. I'd just like to point out the petitioner was raped. Yes, I wish that her former counsel in immigration court had affirmatively brought some of these factors in, even though under the case law he was not required to. The burden was entirely with the government. She suffers a lot of psychological problems. In fact, she is a severely depressed woman. She seeks treatment for her depression. At the same – so I'd like to point out that this case, if the petitioner is removed back to India, she would suffer extreme, extreme hardship. And there were a lot of factors that are not reflected in this record that would show the Court that relocation would not be reasonable in this case. Understood. Thank you. Thank you.
judges: Watson, Hug, Paez